UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. S1-4:08CR257 HEA |
| ) | |
| DERRICK BERNARD ALLEN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was re-referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). On September 2, 2009, the undersigned, at the request of the Defendant, held a supplemental hearing on the motion to suppress evidence based on information recently obtained by the Defendant's attorney. The initial hearing in this matter, which was quite lengthy, occurred in February, 2009. At the supplemental hearing, the Defendant presented testimony from one witness to the original arrest, as well as the tape-recording of the police communications involving this incident.

The undersigned has carefully reviewed the entire audio tape of the police radio communications in this case. The radio calls corroborate almost every significant detail to which Police Officer Betz and Special Agent Ramos testified to at the original hearing.[1] The tape

---

[1] The undersigned notes as pointed out by the Defendant's attorney, that there is nothing on the tape about the Defendant appearing to make reaching gestures while seated in the front seat of his truck. The Defendant says that if this occurred it should be on tape, because it implicates the safety of the officers. Although this is one explanation, the undersigned also notes that the officers were already aware from the confidential informant that the Defendant was in possession of a loaded firearm which was underneath the front seat of his vehicle, and, therefore, there was no need to broadcast information of which they were already aware. It is also possible

specifically corroborates that the Defendant was at his house on Greer, and that the officers set up a detailed surveillance of the house with the intention of following his car to his place of business. They intended to follow the car to his place of business, because it would have been impractical and unsafe to arrest the Defendant as he came out of the house to the truck. The tape also reveals that the officers observed the Defendant and his brother seated on the front porch of the house before they entered the truck to go to the place of business on Page. As the officers identified the Defendant entering the truck, the following conversation took place between the officers:

> The truck's pulling out on the street now. . .
>
> Should be supposedly heading to Skinker and Page, one block north. Follow him till he stops, then take him. . .
>
> Wait till he gets out though, and then take him.

This tape as well as follow up conversations reveal that the officers intended to arrest the Defendant as soon as he got out of his vehicle. Further, during the surveillance of the truck from his house on Greer to the business premises on Page, the officers obtained the license number of the truck and determined that it was registered to the Defendant just as the informant had told them. When they reached the area of the business, they observed the Defendant pull onto the parking lot of his business in the 6300 block of Page. The tape then shows that they observed an individual approach the truck, leave the truck, and then they observed the Defendant Derrick Allen get out of the truck. Just prior to him getting out of the truck, the following radio

---

that all of those officers who were individually involved in detaining and arresting the Defendant were aware of the movement because they conveyed information to each other in person and not on the radio. In summary, for the purposes of the undersigned's findings in this hearing, the undersigned concludes that this information does not significantly affect the credibility of the officers.

communication and transmissions take place:

> If he's gettin' out, let's grab him. . .
>
> He's out of the car. . .
>
> You got enough people to take him?
>
> Yeah, he's going towards the building, toward almost inside the building. . .
>
> Get the opportunity, take him while they're outside that vehicle. I'm en route. . .
>
> All right, they got both of 'em.

The undersigned concludes that this transmission shows that the officers intended to arrest and stop the Defendant as soon as he got out of the car and, in fact, did so. Although he was close to the door at the time they reached the parking lot, according to the tape, nothing in the tape indicates that the Defendant was inside the building at the time he was arrested. If, in fact, he was inside the building, he could only have been a few steps inside the building at most. The undersigned concludes this because less than thirty seconds elapsed from the time that the Defendant was observed to be out of his vehicle to the time **both** individuals were in custody. Assuming the radio transmission did not take place until both individuals were handcuffed, the time lapse from the time that he was observed to be out of the vehicle until the time he was in custody was considerably less than thirty seconds. This transmission is consistent with Det. Betz's testimony that he arrested the Defendant as soon as or shortly after he got out of his vehicle.

As to the testimony of the witness, Eulus Stewart, who was allegedly newly discovered by the Defendant, this witness testified that he was the person who approached the Defendant prior to the police driving onto the lot, to tell the Defendant that someone had attempted to visit his

place of business in order to buy some washing machine parts. He testified that it took some time from the time that the Defendant got out of his car to the time that the police arrested him. He testified that the Defendant was out of his car between five and ten minutes prior to that and, in fact, was in his office between five and ten minutes prior to the police officers arresting him. This testimony is at odds with the contemporaneous radio communications of the officers, which show, as stated above, the Defendant was arrested immediately after getting out of his vehicle. The tape also shows that this was the plan from the beginning. Mr. Stewart also testified that Daryl Allen, the Defendant's brother, was placed against the fence away from the vehicle. Daryl Allen testified at the initial hearing that he was less than three feet from the vehicle, seated on the ground on its passenger side, and could hear the entire conversation between his brother and the police officers. Daryl Allen also said nothing during his testimony about a second individual approaching their vehicle on the lot after they came to a stop. In summary, he failed to say anything about Mr. Stewart being at the scene at any time.

In addition, Mr. Stewart testified that he is acquainted with the Defendant's family from having met the Defendant's brother, Tim Allen, while they were incarcerated together in the Missouri State Penitentiary. Further, he states that he knows the Defendant from seeing him in the neighborhood. He testified that he told an employee of the Defendant about what he observed during the Defendant's arrest within a week or two after the incident. In addition, the undersigned concludes that the Defendant should have known that Stewart was a potential witness from the fact that he had talked to him on his parking lot shortly before he was arrested. Therefore, the undersigned concludes that the Defendant was aware of Stewart as a potential witness before the initial hearing in this matter on February 12, 2009.

Based on the above, and after careful consideration of the testimony presented at the supplemental hearing and carefully reviewing the radio communications in this matter, the undersigned finds nothing in the testimony of Mr. Stewart or in the radio communications which materially affects or changes the undersigned's Memorandum and Recommendation previously entered in this case on May 21, 2009. If anything, the radio recordings tend to corroborate the testimony of the police officers as to almost every significant detail of their testimony. Therefore, the undersigned again concludes that the Defendant's motion to suppress evidence should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion of Defendant to Suppress Evidence [Doc. #31] be **denied.**

Further, the parties are advised that they have eleven (11) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of October, 2009.